---

*In re* BULL.

(*Common Pleas of New York City and County, General Term.* May 18, 1888.)

1. WILLS—CAPACITY TO MAKE—SUBMISSION TO JURY.

The validity of a will being contested upon the ground of want of mental capacity in the testator, it is proper to submit to the jury, in addition to the issue of sanity, the question whether the testator, at the time of the execution of the paper proposed as his will, knew the contents thereof, and understood what disposition was therein made of his property.[1]

2. SAME—CAPACITY TO MAKE—CONDITION BEFORE AND AFTER EXECUTION.

In such case an instruction that "the only point of time to be looked at by the jury at which the capacity of the testator is to be tested, is that when the will was executed," while abstractly correct should not be given, because misleading, as his capacity before and after the time of the execution of the will would be material to determine what such capacity was at the time of such execution.[1]

3. TRIAL—OBJECTIONS TO EVIDENCE—WAIVER BY AGREEMENT.

Where parties agreed in the beginning of a trial that they would not object to evidence taken under a commission, except as noted on the return, and one party has himself, under such agreement, introduced illegal testimony, he will not be allowed, on appeal, to object to the incompetency of the testimony of the adverse party admitted under said agreement.

4. SAME—INSTRUCTIONS—MATTERS PREVIOUSLY CHARGED.

The court having fully instructed the jury as to the law upon a particular question, it is not error to refuse an instruction upon the same question, although correctly propounding the law.

5. APPEAL—REVIEW—SUFFICIENCY OF EVIDENCE.

The evidence upon an issue being conflicting, the court will not set aside the verdict on the ground that it is contrary to the evidence.

Appeal from trial term.

Argued before LARREMORE, C. J., and BOOKSTAVER and ALLEN, JJ.

*Weeks & Forster*, for appellants. *Hoppin & Talbot*, for respondent.

LARREMORE, C. J. This proceeding was begun in the surrogate's court of the county of New York on the petition of Edward Kendrick, who was named as executor in a paper purporting to be the last will and testament of Henry C. Bull, deceased, to have said paper duly admitted to probate as such will. Objections to said probate were filed by some of the next of kin of said deceased, and the issues thereupon arising were transmitted to this court, under the statute in such case made and provided, for trial at a trial term thereof. From the finding of the jury upon such trial, and an order denying the motion for a new trial, this appeal is taken. Although the record is very voluminous, the issues themselves are simple. The only questions which the trial judge submitted to the jury were the following: *First*, at the time of the execution of the paper propounded as the will of Henry C. Bull, was he of sound mind, memory, and understanding, and competent to make a will? *Second*, at the time of the execution of the said paper, did Henry C. Bull know the contents thereof, and understand what disposition was made of his property? The jury found against the proponents, and for the contestants, upon both of these questions, and we see no reason why the verdict should be disturbed. It would be difficult to find a clearer illustration than is afforded by the present case of the familiar rule that an appellate court will not inter-

---

[1]See note at end of case.

fere with the finding of a jury upon conflicting evidence, where the actual questions involved were fairly presented.

As to the first of these questions,—the direct question of testamentary capacity,—there is certainly an abundance of evidence, both of experts and ordinary witnesses, to sustain the verdict. Physicians who had examined the deceased, and were acquainted with him, give it as their opinion that, at the time the paper in question was executed, he was mentally incapable of making a will, and they, in common with non-professional witnesses, state many facts and circumstances which, if true, tend strongly to substantiate their judgment.

In regard to the evidence in support of the second question, the learned counsel for the appellant certainly has misconceived its force and legal effect. Indeed, he argues that the question whether the deceased knew the contents of the will, or understood the disposition it made of his property, should not have been submitted to the jury at all, but should have been passed upon by the court as a pure question of law. This contention is based upon the fact that Mr. Kendrick, the executor named in said will, testified that the will was read over to the deceased before he signed it, and that said deceased knew and comprehended its contents, and that the testimony of such witness has not been impeached or directly contradicted. Undoubtedly, in the trial of an action, if an unimpeached witness testifies unequivocally as to material facts, and no conflict of evidence arises from the testimony of other witnesses, or from the very nature of the circumstances attending the transactions in question, the court is bound to direct a verdict in accordance with the bare testimony of a single witness. But that is far from being this case. Here a conflict of evidence is produced by the very nature of things. The proponent produces a single witness, who swears that the deceased was familiar with and understood the contents of a paper at a certain time. The contestants, in reply, offer witnesses who testify that, at or about the time in question, the deceased was in such an enfeebled mental condition that he could not have comprehended any matters of business, whether communicated orally or in writing, and therefore that the testimony of the witness, whether intentionally or not on his part, was necessarily false. This, certainly, raises a very material conflict of evidence, upon which, as upon the other question above referred to, the finding of the jury must be accepted. The two questions of fact upon which the jury passed, though they were separately submitted, are closely related, and it is hardly conceivable that the jury could have found that Henry C. Bull did not have testamentary capacity, and yet was able to understand and appreciate the legal significance of the paper he signed.

Counsel for appellant also relies upon several other alleged errors, and a few of them may be briefly discussed. It is claimed that witnesses for the contestants, who were not experts, were erroneously allowed to give their opinions upon the general mental and physical condition of the deceased about the time of the execution of the alleged will. This, certainly, would have amounted to serious error if the stipulation had not made a special and particular rule of evidence for the present proceeding. While laymen may describe the acts or words of a person, and so far express their opinions as to characterize the acts or words themselves as rational or irrational, yet the courts have never gone so far as to allow ordinary witnesses to give their opinions upon the general question of a person's sanity or insanity. These objectionable questions were all asked and answered in the testimony taken on commission in the state of Illinois. Counsel for proponent stated early in the case that he intended to take no objections except those which appear noted on the return to the commissions. Counsel for the contestants stated that, with that understanding, he would not make any objections to any interrogatory unless an objection appeared noted on the return, except for special reasons to be satisfactory to the court. Under this agreement both parties pro-

ceeded through the trial, and much incompetent evidence was admitted on both sides, because no objections thereto were noted on the return to the commissions. The evidence, the admission of which counsel for the proponents now claims to be error, came into the case under the operation of this rule, and it would certainly be the height of injustice to allow him to take advantage of such a point upon appeal, especially as he himself, under the same stipulation, introduced and got the benefit of the opinions, as to the testamentary capacity of Henry C. Bull, of many witnesses called by himself who were not experts.

The court also refused to charge a number of requests submitted by proponents' counsel, but we think that the charge of the judge itself fairly presented all the issues, and covered the whole ground. It has been repeatedly held that a judge is not bound to adopt a version of the law submitted by counsel, but that he may state the rules governing the case in his own language, and the only question is as to the accuracy and correctness of such statement. Many of the propositions which the counsel requested the judge to charge were clearly erroneous, and some of the others, though true enough in themselves, were immaterial and unnecessary. It would have been absolutely immaterial, for instance, for the court to charge the abstract proposition that "all persons, except idiots, lunatics, and those who were *non compos mentis*, of lawful age, are competent to make a will, be their understanding ever so weak." This statement is undoubtedly good law, but the general truth conveyed by it had been particularly applied in the present case by the judge's charge on the specific facts here involved. Also as to the fourth request to charge "that the only point of time to be looked at by the jury at which the capacity of the testator is to be tested, is that when the will was executed." The court, in our judgment, very properly refused to charge the proposition in that precise form. Doubtless, as the counsel for the proponent intended it to be understood, it is a correct statement of the law. Provided a testator is sane at the time of making his will, it is immaterial if he were insane just before and just after that time. But the jury are not to be precluded from considering the admitted fact that a person was *non compos mentis* immediately before and immediately after the execution of a paper purporting to be a will, when they come to determine the question whether he had testamentary capacity at the precise moment when the paper was executed. This request, in the naked form in which it was submitted, was therefore well calculated to mislead an average jury as to their power and duty. We have examined the other exceptions in the case, and find that none of them were well taken, and we do not think it is necessary to comment upon any of them other than those already considered. The order appealed from should be affirmed, with costs.

ALLEN and BOOKSTAVER, JJ., concur.

### NOTE.

WILLS—TESTAMENTARY CAPACITY. The real point in issue is testamentary capacity or incapacity at the precise date of the transaction. The condition of testator's mind before and after executing the will is only important as it tends to show the condition of his mind at the exact time of the execution. Chrisman v. Chrisman, (Or.) 18 Pac. Rep. 6; Shaver v. McCarthy, (Pa.) 5 Atl. Rep. 614; Estate of Dalrymple, (Cal.) 7 Pac. Rep. 906; In re Dunham's Will, 1 N. Y. Supp. 120.

An instruction that testator had testamentary capacity if he had full and intelligent knowledge of his property, of those entitled to his bounty, and of the nature of his acts, and that he need not be capable of making contracts, and doing business generally, does not call for too high a degree of capacity. Meeker v. Meeker, (Iowa,) 37 N. W. Rep. 773; Delaney v. City of Salina, (Kan.) 9 Pac. Rep. 271. See, also, Hoban v. Piquette, (Mich.) 17 N. W. Rep. 797; Cline v. Lindsey, (Ind.) 11 N. E. Rep. 441.

The fact that a testator was under the influence of intoxicating liquor at the time of executing his will does not of itself destroy testamentary capacity, In re Convey's Will, (Iowa,) 2 N. W. Rep. 1084; nor that he was addicted to the morphine habit, Frost.

v. Wheeler, (N. J.) 12 Atl. Rep. 612; or believed in spiritualism, Otto v. Doty, (Iowa,) 15 N. W. Rep. 578. Mere insane delusions of a testator will not render his will invalid, In re Cole's Will, (Wis.) 5 N. W. Rep. 346; Rice v. Rice, (Mich.) 19 N. W. Rep. 132; Rice v. Rice, (Mich.) 15 N. W. Rep. 545, unless such delusions affect the will, In re Stewart, (Wis.) 22 N. W. Rep. 392; In re Cole's Will, *supra;* Society v. Price, (Ill.) 5 N. E. Rep. 126. The fact that a testator believed in the exercise of unnatural powers by others does not justify an assumption that he was incompetent to make a will. Schildnecht v. Rompf's Ex'rs, (Ky.) 4 S. W. Rep. 235. Extreme physical debility does not negative testamentary capacity, Stoutenburgh v. Hopkins, (N. J.) 12 Atl. Rep. 689; Chrisman v. Chrisman, (Or.) 18 Pac. Rep. 6; *nor does* old age, Chrisman v. Chrisman, *supra;* nor feeble health, when it is not shown that testator's mind was affected thereby, Blake v. Rourke, (Iowa,) 38 N. W. Rep. 392. Unsound mind produced by disease does not necessarily render one incompetent to make a will. He may still have a disposing mind. Freeman v. Easley, (Ill.) 7 N. E. Rep. 656. Loss of memory destroys testamentary capacity, Lamb v. Lamb, (Ind.) 5 N. E. Rep. 171; but mere impairment of memory does not, Bice v. Hill, (Ill.) 12 N. E. Rep. 236; In re Silverthorn's Will, (Wis.) 32 N. W. Rep. 287, and note; nor do mere eccentricities and peculiarities, Schneider v. Manning, (Ill.) 12 N. E. Rep. 267; nor the fact that the testator was suffering from epilepsy, In re Lewis' Will, (Wis.) 7 N. W. Rep. 829. An order appointing a guardian for a man is not evidence that he lacks testamentary capacity. Rice v. Rice, (Mich.) 15 N. W. Rep. 545; Slinger v. Calverly, (Wis.) 37 N. W. Rep. 236.

As to evidence held insufficient to show testamentary incapacity, see In re Blakely's Will, (Wis.) 4 N. W. Rep. 337; Fraser v. Jennison, (Mich.) 3 N. W. Rep. 882; Eddey's Appeal, (Pa.) 1 Atl. Rep. 425; Hoskins v. Hoskins, (Ky.) 7 S. W. Rep. 546; Schildnecht v. Rompf's Ex'rs, (Ky.) 4 S. W. Rep. 235; In re Buckley's Will, 2 N. Y. Supp. 24. As to what evidence is admissible on that issue, see In re Brown's Will, (Minn.) 35 N. W. Rep. 726. For evidence sufficient to call for an issue to try testator's sanity, see Appeal of Ulmer, (Pa.) 12 Atl. Rep. 686; In re Weil, 1 N. Y. Supp. 91.